## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Alma Simonet, Julie Goldenberg, individuals, and Universal Care, Inc., a California Corporation, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline Puerto Rico, Inc., SB Pharmco Puerto Rico, Inc.,<br><br>Defendants. | CASE NO. 06-1230 (GAG) |

### JOINT MOTION FOR PRELIMINARY APPROVAL OF PUTATIVE CLASS ACTION SETTLEMENT, FOR CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT, DIRECTING NOTICE TO THE CLASS, AND SCHEDULING A FAIRNESS HEARING

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the parties in the above-captioned action hereby move the Court for preliminary approval of this putative class action settlement. The parties in this case have reached a nationwide class action settlement. This settlement resolves all claims by putative class members in the United States and its territories for their costs of purchasing or reimbursing for (in whole or in part) Paxil CR® between April 2002 (when Paxil CR® manufactured at Defendant GlaxoSmithKline's ("GSK" or "Defendant's") plant in Cidra, Puerto Rico was first released to the public) and March 4, 2005. In support thereof, the parties state as follows:

1

1.     This Proposed Settlement between Alma Simonet, Julie Goldenberg, Universal Care, Inc., individually and in their capacities as class representatives ("Plaintiffs"), and their counsel, and GSK will have the effect of resolving all the putative class actions asserting these claims against Defendants, including a case in another jurisdiction. The cases are:

- This case, *Simonet v. SmithKline Beecham Corporation*, U.S.D.C., Dist. of Puerto Rico, Case No. 06-1230; and

- *Goldenberg, et al. v. SmithKline Beecham Corporation*, California Superior Court, Orange County, Case No. 04-CC-00653 ("*Goldenberg* action").

2.     The parties have asked (or will ask) the California Superior Court to stay the *Goldenberg* case, in contemplation of dismissal after the settlement is implemented.

3.     Defendants are the manufacturer and marketer of the prescription drug Paxil CR®.

4.     In this action, originally filed on March 6, 2006 in the District of Puerto Rico, the named plaintiff sought certification of a nationwide class of all persons who purchased Paxil CR®. The complaint was later amended by adding Universal Health Care, Inc. as a plaintiff and seeking certification of a nationwide class that also includes third-party payors (such as insurance companies and employee benefit plans) that reimbursed for Paxil CR®. The *Goldenberg* action was filed on September 21, 2004. Both actions involved allegations of defective manufacturing processes at GSK's Puerto Rico plant, such that the Paxil CR® produced during the class period was not manufactured by proper manufacturing processes and, for example, would "split apart."

5.    GSK, through demurrers, motions to dismiss and/or responsive pleadings, denied all allegations of unlawful conduct, and raised numerous affirmative defenses.

6.    Through extensive negotiations between counsel for the Plaintiffs in both this case and the *Goldenberg* action and counsel for GSK, the parties have reached a settlement, which Plaintiffs and their counsel consider be fair, reasonable, adequate and in the best interests of the putative class.

7.    Under this settlement, GSK will pay up to Twenty Eight Million Dollars ($28 million) to settle class member claims ("Settlement Amount"). The Settlement Amount will be allocated between the Third-Party Payor Class and the Consumer Class. A total of Eleven Million Two Hundred Thousand Dollars ($11.2 million), which is 40% of $28 million, will be allocated to settle the Third-Party Payor Class Claims (the "TPP Class Settlement Amount"). A maximum of Sixteen Million Eight Hundred Thousand Dollars ($16.8 million), which is 60% of $28 million, will be allocated to settle the Consumer Class Claims (the "Consumer Class Settlement Amount"). The settlement monies will be distributed by a Claims Administrator to each class member who submits a valid claim as more fully set forth below.

8.    The reasons this settlement is in the best interests of the class, including the litigation risks presented by the numerous substantive and procedural defenses raised by GSK, are detailed in the attached Memorandum in Support of this Motion.

**WHEREFORE**, the parties respectfully request that the Court preliminarily approve the proposed settlement and enter an Order in the form attached hereto:

(A)    Certifying for settlement purposes the following nationwide classes:

Consumer Class

All natural persons in the United States and its territories who purchased or paid for (in whole or in part) Paxil CR® between April 1, 2002 and March 4, 2005.

Third-Party Payor Class ("TPP Class")

All entities in the United States and its territories (other than Medicaid, Medicare and other federally-funded government healthcare programs) that purchased, paid for, or reimbursed for (in whole or in part), Paxil CR® between April 1, 2002 and March 4, 2005.

(B)    Approving the form of notice to class members and authorizing dissemination of the notice;

(C)    Establishing a deadline for filing requests for exclusion from the Class and objections to the Proposed Settlement;

(D)    Approving a claims process by which class members can submit claims for payment under the settlement;

(E)    Establishing a schedule for the filing of motions and memoranda in support of or objecting to final approval of the Proposed Settlement and any petition for the award of attorneys' fees and reimbursement of litigation costs and expenses;

(F)    Establishing a date for a fairness hearing to consider approval of the Proposed Settlement and its terms and the award of attorneys' fees, costs and expenses of class counsel;

(G)    Preliminarily barring and enjoining all Class members, or any of them, from commencing or prosecuting any actions asserting any of the settled claims, either directly, representatively, derivatively or in any other capacity, against the Defendants, pending the final determination of whether the settlement provided for in this agreement should be approved by the Court;

(H)    Appointing Plaintiffs as class representatives for purposes of the settlement; and

(I)    Appointing class counsel for purposes of representing the Class and Class members in this litigation.

Respectfully submitted,

DATE: _2/27/09_          BY: _John F. Swavs_

*Attorneys for Plaintiffs*

DATE: _2/27/09_          BY: _Frederick D. Herold_

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Alma Simonet, Julie Goldenberg, individuals, and Universal Care, Inc., a California Corporation, on behalf of themselves and all others similarly situated, | CASE NO.  06-1230 (GAG) |
| Plaintiffs, | |
| v. | |
| SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline Puerto Rico, Inc., SB Pharmco Puerto Rico, Inc., | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF
## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF PUTATIVE CLASS ACTION SETTLEMENT, FOR CERTIFICATION OF
## THE CLASS FOR PURPOSES OF SETTLEMENT, DIRECTING NOTICE TO
## THE CLASS, AND SCHEDULING A FAIRNESS HEARING

# TABLE OF CONTENTS

Table of Authorities .     .     .     .     .     .     .     iv

INTRODUCTION     .     .     .     .     .     .     .     1

I.     PROCEDURAL HISTORY     .     .     .     .     3

     A.     *Simonet*     .     .     .     .     .     3

     B.     *Goldenberg and Universal Care, Inc.* formerly *Cole*     .     3

II.     SETTLEMENT NEGOTIATIONS     .     .     .     5

ANALYSIS     .     .     .     .     .     .     .     6

III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE PRELIMINARILY APPROVED .     .     .     .     .     .     6

     A.     Procedure for Approval of a Class Action Settlement     .     7

     B.     Standard for Preliminary Approval     .     .     8

     C.     The Proposed Settlement Provides Substantial Relief For Class Members and Should Be Preliminarily Approved     .     .     .     .     9

IV.     THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 SETTLEMENT CLASS UNDER RULE 23(a) AND (b)     .     .     .     .     .     10

     A.     The Rule 23 Settlement Class Satisfies the Criteria of Rule 23(a)     .     .     .     .     10

         1.     Members of the Rule 23 Settlement Class are so Numerous that Joinder of all Members is Impracticable.     .     .     .     11

         2.     Common Issues of Law or Fact Unite the Class Member Claims     .     .     .     11

       3.    The Claims of the Proposed Class Representative
           Are Typical of the Class   .   .   .   .   12

       4.    Class Counsel and the Named Plaintiffs are
           Adequate   .   .   .   .   .   .   12

   B.   The Rule 23 Settlement Class Should be Certified Under
       Rule 23(b)(3)   .   .   .   .   .   13

       1.    Common Issues of Fact and Law Predominate   .   14

       2.    A Class Action Settlement is the Superior Means of
           Resolving this Dispute   .   .   .   .   14

V.   THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
    APPROVED BECAUSE IT IS PRESUMPTIVELY FAIR   .   16

VI.   OTHER FACTORS SUPPORT THE CONCLUSION THAT THE
    SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE   18

VII.   THE COURT SHOULD APPROVE THE CONTENT AND
    DISTRIBUTION OF THE PROPOSED NOTICE   .   .   21

   A.   The Notice Plan is Procedurally Fair   .   .   .   22

   B.   The Notice is Substantively Fair   .   .   .   23

VIII.  THE COURT SHOULD SET DATES FOR THE FINAL
    APPROVAL PROCESS   .   .   .   .   .   25

PROPOSED TIMETABLE   .   .   .   .   .   .   25

CONCLUSION   .   .   .   .   .   .   .   .   25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................. 15

*Armstrong v. Board of School Directors*,
616 F.2d 305 (7th. Cir. 1980) ................................................................................... 8

*Brotherton v. Cleveland*,
141 F. Supp. 2d 907 (S.D. Ohio 2001) ...................................................................... 18

*Bussie v. Allmerica Financial Corp.*,
50 F. Supp. 2d 59 (D. Mass. 1999) ........................................................................... 19

*In re Cendant Corp. Litigation*,
264 F.3d 201 (3d Cir. 2001)................................................................................ 19-21

*Collazo v. Calderon*,
212 F.R.D. 437 (D.P.R. 2002) ............................................................................ 11, 12

*Detroit v. Grinnell* ,
495 F.2d 448 (2d Cir. 1974), *overruled on other grounds by*
*Missouri v. Jenkins*, 491 U.S. 274 (1989) ................................................................ 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. at 175-76 ................................................................................................... 22

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980)............................................................................ 16, 17

*In re General Motors Corp.*,
55 F.3d 768 (3d Cir. 1995)......................................................................................... 7

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)...................................................................................... 19

*Grier v. Chase Manhattan Automobile Finance Co.*, No. 99-180, 2000
WL 175126 (E.D. Pa. Feb. 16, 2000) .............................................................. 8, 16, 17

*Grunin v. International House of Pancakes*,
513 F.2d 114 (8th Cir. 1975) ............................................................................. 8, 9, 24

*Liddell v. Board Of Education,*
126 F.3d 1049 (8th Cir. 1997) ........................................................................... 6

*In re Linerboard Antitrust Litigation,* MDL No. 1261,
2004 WL 1221350 (E.D. Pa. Jun. 2, 2004) ...................................................... 18

*Little Rock School District v. Pulaski County Special School District
No. 1,*
921 F.2d 1371 (8th Cir. 1990) ......................................................................... 16

*In re Michael Milken and Associates Securities Litigation,*
150 F.R.D. 57 (S.D.N.Y. 1993) .......................................................................... 8

*Nilsen v. York County,*
382 F. Supp. 2d 206 (D. Me. 2005) ................................................................. 19

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) .......................................................................................... 22

*In re Prudential Insurance Co. of America Sales Practices Litigation,*
148 F.3d 283 (3d Cir. 1998) .................................................................. 7, 16, 19

*In re Relafen Antitrust Litigation,*
231 F.R.D. 57 (D. Mass. 2005) ........................................................................ 19

*Rolland v. Cellucci,*
191 F.R.D. 3 (D. Mass. 2000) .......................................................................... 19

*In re Traffic Executive Associate —Eastern Railroads,*
627 F.2d 631 (2d Cir. 1980) .............................................................................. 8

*In re Veneman,*
309 F.3d 789 (D.C. Cir. 2002) .................................................................... 23, 24

*In re Warfarin Sodium Antitrust Litigation,*
391 F.3d 516 (3d Cir. 2004) ........................................................................ 19-21

*Williams v. National Bank,*
216 U.S. 582 (1910) ........................................................................................... 6

# FEDERAL RULES

Fed. R. Civ. P. 23 .......................................................................................... 10

Fed. R. Civ. P. 23(a) ..................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ..................................................................... 12, 14, 15

Fed. R. Civ. P. 23(e)(1)(C) ............................................................................ 16

# OTHER

*Manual for Complex Litigation (Fourth)*, § 21.62 ....................................... 16

*Manual for Complex Litigation (Fourth)*, § 21.632 ....................................... 7

*Manual for Complex Litigation (Fourth)*, § 30.41.................................... 2, 16

*Manual for Complex Litigation (Fourth)*, § 30.42 ...................................... 18

*Manual for Complex Litigation (Fourth)*, § 30.211 ..................................... 22

*2 Newberg on Class Actions*, § 3:5 (4th ed. 2002) ...................................... 11

*2 Newberg on Class Actions*, § 3:10 (4th ed. 2002) ...................................... 11

*2 Newberg on Class Actions*, § 4:25 (4th ed. 2002) ...................................... 14

*2 Newberg on Class Actions*, § 4:27 (4th ed. 2002) ...................................... 15

*4 Newberg on Class Actions*, § 11.24 (4th ed. 2002) ...................................... 8

*4 Newberg on Class Actions*, § 11.41 (4th ed. 2002) ........................... 7, 9, 16

Wright & Miller, Federal Practice & Procedure Civil 3d § 1786 (2008)...................... 22

# INTRODUCTION

Following months of negotiation and years of litigation, counsel for Alma Simonet, Julie Goldenberg, and Universal Care, Inc., individually and in their capacities as class representatives ("Plaintiffs") and counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), on behalf of GSK and related defendants GlaxoSmithKline Puerto Rico, Inc., and SB Pharmco Puerto Rico, Inc. ("Defendants") reached a settlement ("Proposed Settlement") to conclude this litigation, subject to the Court's approval and determination of the fairness, reasonableness and adequacy of the Proposed Settlement. As discussed in greater detail below, the Proposed Settlement provides substantial relief to the members of the putative settlement class ("Settlement Class Members").

The Proposed Settlement is a fair resolution of two separate cases that sought a refund of monies paid by natural persons and entities in the United States and its territories, who purchased, paid for, or reimbursed for (in whole or in part) Paxil CR® between April 1, 2002 (when Paxil CR® manufactured at GSK's plant in Cidra, Puerto Rico was first released to the public) and March 4, 2005. Both cases were substantively and procedurally complex. The Proposed Settlement was reached only after substantial discovery and litigation had taken place over the course of nearly four-and-a-half years. The Proposed Settlement was crafted by very experienced counsel on both sides. Counsel for the Plaintiffs in both cases were involved in negotiating the Proposed Settlement and all support this Motion for Preliminary Approval. The Proposed Settlement involves a payment by GSK of up to $28 million to resolve the claims.

The parties reached the Proposed Settlement after the courts denied in part, demurrers and motions to dismiss and hearings on class certification were approaching. The Proposed Settlement provides substantial relief to the Settlement Class Members, but also factors the risks associated with continued litigation. The parties have agreed on a notice plan ("Notice Plan") that will provide Settlement Class Members with the best notice practicable, and allow for a full and fair opportunity to consider the Proposed Settlement.

At the preliminary approval stage, the Court is not expected to engage in an analysis as extensive as is appropriate for final approval.[1] Neither formal notice nor a lengthy hearing is required for the Court to grant preliminary approval of a class action settlement. The Court may instead grant this relief upon an informal presentation by the settlement parties, and may conduct any necessary hearing in court or in chambers at the Court's discretion.[2] Accordingly, the parties request that the Court certify a Rule 23 settlement class, preliminarily approve the Proposed Settlement, approve the proposed notices informing putative Class Members of the Proposed Settlement, and set a final approval hearing to consider the fairness of this Proposed Settlement.

---

[1] *See* David F. Herr, *Annotated Manual for Complex Litigation (Fourth)*, Section 21.61 (2004) (hereinafter referred to as "Ann. Manual"); *Manual for Complex Litigation (Fourth)*, Section 30.41 (West/Fed. Jud. Ct. 2004) (hereinafter referred to as "Manual").
[2] *Id.*

2

## I.   PROCEDURAL HISTORY

Both of the cases leading to this Proposed Settlement were complex and hotly contested by GSK from the outset. The procedural history of each case will be briefly summarized in separate sections below.

### A.   *Simonet*

The case at bar was filed in March 6, 2006 by Alma Simonet as the class representative plaintiff. Plaintiff filed an amended complaint on June 29, 2006. GSK filed a motion to dismiss, which was fully briefed. The parties engaged in investigation and discovery. Plaintiff's counsel assisted in finding and interviewing witnesses and former employees who worked at the Cidra facility. Plaintiff's counsel were on the verge of launching broad-based discovery when settlement negotiations ensued. The complaint was recently amended by adding Universal Health Care, Inc. as a plaintiff and seeking certification of a nationwide class that includes both natural persons and third-party payors (such as insurance companies and employee benefit plans) who purchased, paid for, or reimbursed for (in whole or in part) Paxil CR® between April 1, 2002 and March 4, 2005.

### B.   *Goldenberg and Universal Care, Inc.,* formerly *Cole*

The *Cole* case was filed on September 21, 2004 in the Superior Court of Orange County, California. The case was extensively litigated for nearly four-and-a-half years. There were nine potentially dispositive motions filed, including motions to dismiss (demurrers), motions to strike certain allegations, and a motion for judgment on the pleadings. Plaintiffs filed four amended complaints, which required leave of court

3

through noticed motions. After nearly three years, Lois Cole was unable to continue as the Consumer Class Representative, and Julie Goldenberg was named as her substitute. Universal Care, Inc. ("UCI") was also added as a Plaintiff.

Both sides engaged in extensive discovery. Plaintiffs' counsel issued multiple sets of document requests, and Lois Cole, Julie Goldenberg and UCI responded to multiple interrogatories and requests for production. There were more than a dozen discovery motions filed. The court eventually appointed a discovery referee who issued four separate reports. Prior to production, Plaintiffs' counsel were also required to review and redact tens of thousands of documents to protect the privacy of UCI and its members, Ms. Goldenberg, and Ms. Cole. Plaintiffs' counsel eventually produced well over 13,000 documents in response to Defendants' discovery requests. Plaintiffs' counsel also reviewed, analyzed and categorized hundreds of thousands of pages of documents produced by GSK. Plaintiffs' counsel interviewed several former GSK employees and interacted extensively with Ms. Goldenberg's medical care providers. GSK issued 24 deposition notices or deposition subpoenas, including deposition notices of UCI corporate representatives. Plaintiffs' counsel interviewed numerous UCI executives and physicians in preparation for depositions in this matter.

Finally, Plaintiffs' counsel filed a class certification motion, which required Plaintiffs to retain and prepare experts, including obtaining detailed written reports and declarations.

## II.    SETTLEMENT NEGOTIATIONS

The Proposed Settlement before the Court was reached following extensive arms' length negotiations involving five different law firms on Plaintiffs' side and national counsel for GSK on the other. Those negotiations took place following and during the vigorous litigation described above. The settlement negotiations took place over the better part of a year with in-person meetings. In between the in-person negotiations, countless proposals and counterproposals were dispatched between Plaintiffs and GSK's counsel, by telephone and email.

Literally tens of thousands of documents, numerous depositions, and multiple hearings in both cases gave all counsel full knowledge of the strengths and weaknesses of these claims and have resulted in this Proposed Settlement, which all Plaintiffs' counsel believe is an excellent result for the Class.

THE PROPOSED SETTLEMENT

The following summarizes the principal terms of the Proposed Settlement:

- GSK will pay a settlement amount of up to Twenty Eight Million Dollars ($28 million) to settle class member claims. The Settlement Amount will be allocated between the Third-Party Payor ("TPP") Class and the Consumer Class;

- A total of Eleven Million Two Hundred Thousand Dollars ($11.2 million), which is 40% of $28 million, will be allocated to settle the Third-Party Payor Class Claims;

- A maximum amount of up to Sixteen Million Eight Hundred Thousand Dollars ($16.8 million), which is 60% of $28 million, will be allocated to settle the Consumer Class Claims;

- A two-tier claims process for the Consumer Class will allow members of the Class to recover costs for defective Paxil CR® tablets that split apart. A claims process for the Third-Party Payor Class will allow members of the TPP Class to recover

costs for Paxil CR® based on the number of covered lives for each non-government TPP (other than federally funded healthcare programs such as Medicare and Medicaid);

- Attorneys' fees, litigation costs, and expenses of class notice and administration, subject to court approval, will be paid from the $28 million Settlement Amount. As part of the Proposed Settlement, Plaintiffs' counsel have agreed that they will not seek more than thirty-three and one-third percent (33 1/3%) of the Settlement Amount as attorneys' fees and will seek less if more than 10% of TPP Class Members "opt-out" of the Proposed Settlement);

- Plaintiffs will request approval for incentive payments for the three current named Plaintiffs in the actions, in addition to the share of their respective claims as qualified members of the Settlement Class;

- Plaintiffs' counsel will be appointed counsel for all members of the putative nationwide class ("Class Counsel");

- If the Court grants preliminary approval, notice will go to Settlement Class Members, to include information about the Proposed Settlement, the procedure to opt out of the class and to make claims, and the fairness hearing for final approval.

## ANALYSIS

### III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND SHOULD BE PRELIMINARILY APPROVED.

Settlement is the preferred means of resolving litigation.[3]  Settlement of class actions is particularly appropriate because the costs, delays, risks, and uncertainties inherent in complex litigation might overwhelm any recovery the class stands to obtain.[4] By supporting the settlement of complex class action disputes, the judicial system can

---

[3]  *Williams v. Nat'l Bank*, 216 U.S. 582, 595 (1910); *Liddell v. Bd. Of Educ.*, 126 F.3d 1049, 1056 (8th Cir. 1997).

[4]  4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") at § 11.41 (4th ed. 2002).

help minimize litigation expenses on both sides, reduce the strain on scarce judicial resources, and avoid the risks of trial to both parties.[5]

Nevertheless, in a class action brought under Rule 23 of the Federal Rules of Civil Procedure, the district court must oversee the resolution because the Court, like the Class Representatives and Class Counsel, assumes a fiduciary duty to absent Settlement Class Members. In addition, for cases where no class has yet been certified, the Court must certify the Rule 23 class for settlement purposes prior to approving the settlement.

### A.    Procedure for Approval of a Class Action Settlement

Under Rule 23(e), preliminary approval is the first of a two-stage process where the Court considers whether the settlement appears to fall within the range of reasonableness and whether the proposed notice plan meets the requirements of due process. Where a class has not yet been certified, a district court must first find that the settlement class meets the requirements of Rule 23, and "may take the proposed settlement into consideration when examining the question of certification."[6] Certification of settlement classes under Rule 23 is routine; moreover, the certification hearing and preliminary fairness evaluation are usually combined.[7] The second and last step is a final approval hearing, at which time argument concerning the fairness,

---

[5]  *In re Gen. Motors Corp.,* 55 F.3d 768, 784 (3d Cir. 1995) (citing cases); *Newberg* at § 11.41; Ann. Man. at §§ 23, 30.4.

[6]  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 308 (3d Cir. 1998).

[7]  *See* Manual § 21.632, at 320-21.

adequacy and reasonableness of the settlement may be presented and the Court may consider class member reaction to the settlement.[8]

## B.    Standard for Preliminary Approval

A hearing on a motion for preliminary approval is not a fairness hearing. Rather, its purpose is to determine whether to notify class members of the proposed settlement and proceed with a fairness hearing.[9]    While the decision to approve a proposed settlement is committed to the Court's sound discretion, courts attach "[a]n initial presumption of fairness...to a class settlement reached in arm's length negotiations between experienced and capable counsel after meaningful discovery."[10]    The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.[11]    In the same vein, a court considering a motion for preliminary

---

[8] *See* Ann. Manual § 30.41 at 236-37.

[9] *See In re Traffic Executive Assoc. — Eastern Railroads*, 627 F.2d 631, 633 (2d Cir. 1980) (grant of preliminary approval is not "tantamount to a finding that the settlement is fair and reasonable. It is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness"); *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th. Cir. 1980).

[10] *Grier v. Chase Manhattan Auto. Fin. Co.*, No. 99-180, 2000 WL 175126, *5 (E.D. Pa. Feb. 16, 2000) (citation omitted); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *Newberg* at § 11.24.

[11] *In re Michael Milken and Associates Securities Litigation*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); Newberg at § 11.43.

approval neither decides the merits of the underlying case, nor crafts a settlement for the parties.[12]

### C.    The Proposed Settlement Provides Substantial Relief for Class Members and Should Be Preliminarily Approved

With a total payment of up to $28 million, this Proposed Settlement clearly provides a significant, substantial amount to compensate Settlement Class Members. A primary advantage of the Proposed Settlement for Settlement Class Members is that their claims can be validated without their having to produce a split tablet of Paxil CR®. Consumer Class Claimants can validate claims by submitting proof in the form of a truthful written declaration that attests that he or she paid for, in whole or part, and received split tablets of Paxil CR®. This validation process makes it unnecessary for claimants to produce split tablets that would likely have been lost or misplaced over time. The TPP Class Claimants must also submit claims without producing any split tablets, as recovery is keyed to the number of covered lives in their plan, making the claims process quite simple for TPPs.

Class Counsel believe the Plaintiffs' claims in this case are strong. At the same time, evidentiary hurdles abound and further dispositive motions were likely. These and other risks and obstacles, both on factual and legal grounds, strongly inform the judgment of Plaintiffs' counsel that a settlement allowing Settlement Class Members to recover for

---

[12] *Grunin*, 513 F.2d at 123 ("neither the trial court in approving the settlement nor this Court in reviewing the approval have the right or duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute"); *see also Newberg* at § 11.41.

monies paid without producing split tablets is eminently reasonable. The fact that different sets of Plaintiffs' counsel, each pursuing different cases in California and Puerto Rico, have joined to endorse the Proposed Settlement confirms both the arm's-length character of the negotiations, as well as the considered opinion of counsel in favor of the Proposed Settlement.

## IV.   THE COURT SHOULD CERTIFY THE PROPOSED RULE 23 SETTLEMENT CLASS UNDER RULE 23(a) AND (b)

The Court's threshold task is to determine whether the proposed settlement class satisfies the requirements of Rule 23(a), and at least one prong of Rule 23(b).[13] Here, the Court can find that, for purposes of this settlement, the Rule 23 settlement class easily meets the criteria of Rule 23(a). Additionally, because the Rule 23 settlement class meets the criteria of Rule 23(b)(3), certification under that prong is appropriate.

### A.   The Rule 23 Settlement Class Satisfies the Criteria of Rule 23(a)

Rule 23(a) requires the proponents of certification to establish that 1) members of the proposed class are so numerous that joinder of all members is impracticable; 2) commonality exists among issues of law or fact raised by the class members; 3) the claims of the proposed class representatives are typical of the claims of the absent class members; and 4) the proposed class representatives will adequately represent the interests of the class. Fed. R. Civ. P. 23(a).[14]

---

[13] Fed. R. Civ. P. 23.

[14] While GSK does not concede these issues, it has, nonetheless, for settlement purposes only, agreed not to contest them.

     1.    **Members of the Rule 23 Settlement Class are so Numerous that Joinder of all Members is Impracticable**

Prevailing precedent supports the proposition that putative class sizes of 40 will support a finding of numerosity.[15]   There are thousands of Third-Party Payors and hundreds of thousands of Consumer Class members in the settlement class, making joinder clearly impracticable.   For settlement purposes, GSK has not disputed that numerosity exists.

     2.    **Common Issues of Law or Fact Unite the Class Member Claims**

The threshold for finding commonality under Rule 23(a)(2) is not high.  It requires only that there is "at least one question of law or fact common to the class."[16]   The standard is "easily met" for most settlement classes.[17]

Here, Plaintiffs allege that numerous common questions of law and fact applicable to the putative Class exist with respect to the liability issues, relief issues and anticipated affirmative defenses.  For example, common questions of fact include matters relating to GSK's manufacturing procedures.  Common questions of law include whether members of the putative Class were entitled to refunds because consumers received adulterated pharmaceutical drugs.  GSK's defenses also provide common questions of law and fact.

---

[15] *Newberg* at § 3:5 ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.")

[16] *Collazo v. Calderon,* 212 F.R.D. 437, 442 (D.P.R. 2002).

[17] *Newberg* at § 3:10.

### 3.    The Claims of the Proposed Class Representatives are Typical of the Class

Rule 23(a) also requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry works to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. Accordingly, under the typicality requirement, "the representative's claim must arise from the same event, practice or conduct, and be based on the same legal theory as those of other class members."[18] Thus, the typicality inquiry can sometimes tend to merge with the commonality analysis.

Here, Plaintiffs assert that their claims are typical of the claims of the members of the proposed Rule 23 Settlement Class. Each named Plaintiff paid for or reimbursed its members for Paxil CR® between April 1, 2002 and March 4, 2005. Thus, Plaintiffs have alleged the same claims for themselves as they seek to certify for the class, and they rely on the same legal theories as all other proposed Settlement Class Members.

### 4.    Class Counsel and the Named Plaintiffs are Adequate

Under Rule 23(a)(4) the representative parties must fairly and adequately protect the interests of the class. To fulfill this requirement, two factors must be satisfied. Plaintiffs must show: (1) "that the interests of the representative party will not conflict with the interests of any of the class members"; and (2) "that the counsel chosen to

---

[18] *Collazo,* 212 F.R.D. at 442-43.

pursue the suit is qualified, experienced, and able to vigorously conduct the proposed litigation."[19]

The named Plaintiffs assert that they have no interests that are anything but identical to the proposed Rule 23 settlement class; that is, they stand in the same factual and legal shoes as every other Settlement Class Member, and seek the same form of relief. Additionally, the representative Plaintiffs have shown their commitment to prosecute this matter, having supplied Class Counsel with essential factual information concerning their legal claims, answering interrogatories and document requests, and demonstrating a willingness to testify if called upon.

The question of competent and vigorous representation is met. The Settlement Class is represented by five law firms in California and Puerto Rico. Each law firm handles complex litigation and has the required resources and capability. Lead Class Counsel have a breadth and depth of experience in certifying, trying, and settling class actions. (*See* Affidavit of Brian R. Strange, ¶¶ 9-13) Additionally, this Court and other federal courts have repeatedly found the firms to be adequate class and MDL counsel.

**B.    The Rule 23 Settlement Class Should be Certified Under Rule 23(b)(3)[20]**

Plaintiffs assert that the settlement class may be certified under Rule 23(b)(3) because: (1) common questions of law or fact predominate over questions affecting only

---

[19] *Id. at* 443 (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

[20] While GSK does not concede these issues, it has, nonetheless, for settlement purposes only, agreed not to contest them.

individual members; and (2) a class action is "superior to other available methods" of adjudicating the case.[21]    Because a settlement obviates the need for the Court to determine the manageability of a litigation class, the case can be certified under Rule 23(b)(3) now.  Rule 23(b)(3) also preserves a class member's ability to opt out of the settlement if he, she or it wishes to do so.[22]

### 1.    Common Issues of Fact and Law Predominate

No bright line rules determine predominance under Rule 23(b)(3).  Rather, the fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance.  The Court looks to whether some elements of claims and defenses can be proven on a simultaneous, class-wide basis.[23]

Here, Plaintiffs and the Rule 23 Settlement Class that they hope to represent seek to remedy a common legal grievance concerning the costs of split tablets of Paxil CR®. The Proposed Settlement does just that – resolves and settles with finality all of the claims asserted against GSK.

### 2.    A Class Action Settlement is the Superior Means of Resolving this Dispute

Rule 23(b)(3)'s superiority analysis essentially looks to alternative methods of adjudication and whether maintenance of a class action would be fair and efficient to all

---

[21] Fed. R. Civ. P. 23(b)(3).

[22] Fed. R. Civ. P. 23(c)(3).

[23] *Newberg* at § 4:25.

14

parties.[24]   Superiority is satisfied in the present case because: 1) Settlement Class Members have expressed little interest in individually controlling the prosecution of separate actions;[25] 2) prosecuting or defending separate actions at this stage would be impractical and inefficient; and 3) with the exception of the individual action referenced above, to the parties' knowledge there is no other litigation concerning this controversy.[26] In addition, because the action is being settled, rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a nationwide class action involving the issues in this case.[27]

Resolution of the litigation by the parties' Proposed Settlement is superior to other available methods for a fair and efficient adjudication of the action because it avoids duplicative litigation of common issues and prevents the problem of contradictory outcomes.  In addition, the Proposed Settlement reaches tens of thousands of persons and entities.   The proposed resolution provides all Settlement Class Members with a convenient, uncomplicated opportunity to receive a refund for payments made for split

---

[24] *Id* at § 4:27.

[25] The parties are aware of one exception to this -- an individual action filed by a few Third Party Payors who found out about this settlement and may decide to opt out and pursue their individual claims instead.  However, this single lawsuit, brought on an individual, non-class basis, shows only very minimal interest in individually controlling the prosecution of separate actions and does not weigh against settlement class certification here.

[26] Fed. R. Civ. P. 23(b)(3).

[27] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

tablets of Paxil CR® - an opportunity that they might not otherwise receive if this litigation continues on for years to trial and through appeal.

## V.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED BECAUSE IT IS PRESUMPTIVELY FAIR

In addition to certifying the Rule 23 class, the Court is to determine on a preliminary basis whether the settlement is "fair, reasonable, and adequate."[28]  District Courts begin their analysis with a presumption that a proposed settlement is fair and valid:

> [A] presumption of fairness exists where: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small.[29]

Before reaching the Proposed Settlement, the parties in both cases engaged – to varying degrees – in extensive factual investigation and thorough discovery.  The parties exchanged hundreds of thousands of pages of documents.  Plaintiffs retained experts and

---

[28] Fed. R. Civ. P. 23(e)(1)(C); *see also Prudential*, 148 F.3d at 316; Ann. Manual § 21.632.  As described in the *Manual for Complex Litigation*:
Fairness calls for a comparative analysis of the treatment of class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class.  Reasonableness depends on an analysis of the class allegations and claims and the representativeness of the settlement to those claims.  Adequacy involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.
*Manual*, § 21.62, at 315.

[29] *Newberg* at § 11.41; *see also Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 921 F.2d 1371, 1391 (8th Cir. 1990) (recognizing that settlements are presumptively valid); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (analyzing above-cited factors); accord *Grier*, No. 99-180, 2000 WL 175126, at *5 (E.D. Pa. Feb. 16, 2000)(same); *Manual* at § 30.41.

disclosed those in moving for class certification. Settlement was not reached until GSK had sought numerous dismissals of both cases and after class certification had been partially briefed in the *Goldenberg* case.

The parties negotiated the Proposed Settlement in good faith and at arm's length. This deal was reached only after hard-fought settlement negotiations that took place over the course of a number of different in-person sessions held across the country. Counsel for each of the parties consider the Proposed Settlement to be a fair resolution of their respective differences based upon the numerous rulings received in the courts handling these cases. In light of counsel's experience, the Court should accord their assessment considerable weight.[30] Thus, counsel for each of the parties—who are experienced plaintiffs' class action and defense attorneys—have fully evaluated the strengths, weaknesses, and equities of the parties' respective positions. This factor supports the fairness and reasonableness of a class action settlement.[31] Moreover, this Proposed Settlement was achieved after the litigation had been conducted for more than four years and was therefore mature.

In addition, the Proposed Settlement does not give undue preferential treatment to the named Plaintiffs or other members of the Class. Subject to Court approval, Plaintiffs will seek service awards for the current named Class Representatives, to be paid from the Settlement Amount. Such awards are routine, appropriate, and serve public policy by

---

[30] See *Grier*, 2000 WL 175126 at *5.

[31] See *Ellis*, 87 F.R.D. at 18 (citing cases and authorities).

encouraging parties to come forward to protect the rights of others, while at the same time compensating the class representatives for their time, effort, and inconvenience – including participating in discovery – in representing the interests of the putative class.[32]

The Proposed Settlement provides that attorneys' fees and costs will be paid from the $28 million Settlement Amount. Class Counsel will seek no more than one-third of the Settlement Amount, to cover their fees and incurred costs (and will seek less if more than 10% of TPP Class Members "opt-out" of the Proposed Settlement.[33] The expected costs and expenses of class administration will also be paid out of the Settlement Amount. Given the significant amount of work done in this case over a four-and-a-half-year period, the amount of risk and cost associated with the litigation and the benefits provided to the Class, the parties' agreement on the fees and costs that may be sought is well within the range of reasonableness.

## VI.    OTHER FACTORS SUPPORT THE CONCLUSION THAT THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

In addition to being presumptively valid, the settlement meets the additional fairness criteria. These criteria include: 1) the complexity, expense, and likely duration of the litigation; 2) the reaction of the class to the settlement; 3) the stage of the

---

[32] *See e.g., In re Linerboard Antitrust Litig.,* MDL No. 1261, 2004 WL 1221350, *19 (E.D. Pa. Jun. 2, 2004) (incentive awards of $25,000); *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) ($50,000 incentive award); *see also Manual* § 30.42 at n.763.

[33] Class Counsel's attorneys' fees will be addressed in the formal fee petition Class Counsel will submit to the Court in connection with the motion for final approval of the proposed settlement.

proceedings and the amount of discovery completed; 4) the risks of establishing liability; 5) the risks of establishing damages; 6) the risks of maintaining the class action through trial; 7) the ability of the defendant to withstand a greater judgment; 8) the range of reasonableness of the settlement fund in light of the best possible recovery; 9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[34]    Application of these factors support the conclusion that the settlement is fair, reasonable, and adequate.

The **first factor** "captures the probable costs, in both time and money, of continued litigation."[35]    Here, this factor supports settlement because continuing discovery before trial, class certification, and continuing litigation would require additional document production, numerous depositions, extensive motion practice, and ultimately a complicated, lengthy trial.  The time and expense would be significant.  The **second factor** "attempts to gauge whether members of the class support the settlement."[36]    Here, it is significant that the Class Representatives are fully in support of

---

[34] *In re Relafen Antitrust Litigation*, 231 F.R.D. 57, 72-73 (D. Mass. 2005)(citing *Detroit v. Grinnell* , 495 F.2d 448, 463 (2d Cir. 1974), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989)); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004)(quoting *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)); *Nilsen v. York County,* 382 F. Supp. 2d 206, 212 (D. Me. 2005).

[35] *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).

[36] *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 299 (3d Cir. 1998); *see also Rolland v. Cellucci*, 191 F.R.D. 3, 11 (D. Mass. 2000) (*citing Bussie v. Allmerica Financial Corp.*, 50 F.Supp.2d 59, 72 (D. Mass. 1999) (stating that favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of proposed settlement).

19

the Proposed Settlement. It is anticipated that this Proposed Settlement will be favorably received on a wide scale. The **third factor** "captures the degree of case development that class counsel has accomplished prior to settlement."[37] This litigation has been in progress for more than four-and-a-half years, during which the parties have engaged in extensive discovery and investigation. The settlement negotiations were extensive as detailed above. The **fourth and fifth factors** "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement."[38] The parties disagree on Plaintiffs' ability to prove liability at trial. While Class Counsel believe the claims are strong, counsel are also experienced and realistic enough to know that the guaranteed recovery and certainty achieved through settlement - as opposed to the uncertainty in the jury trial and appellate process - weighs heavily in favor of settlement. Defenses include the burden of Plaintiffs to produce evidence that Plaintiffs paid for and received split tablets, complex federal preemption issues, causation and reliance issues. The difficulty in tracking and producing split tablets and the various other defenses could result in little or no recovery for the Class. The **sixth factor** measures the likelihood of obtaining and keeping class certification if the action were to proceed to trial.[39] Although concerns about the manageability of a large class of individual and TPP purchasers and reimbursers of Paxil CR® over a

---

[37] *Cendant*, 264 F.3d at 235.

[38] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

[39] *Id.*

lengthy period of time do not pose a problem for the certification of the Proposed Settlement, there is a risk that such a large class could create some difficulty if the litigation continued to trial. The **seventh factor** considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement."[40] This is not a factor here, as GSK has significant resources and could withstand judgment for a greater amount. The **eighth and ninth factors** "evaluate whether the settlement represents a good value for a weak case or poor value for a strong case."[41] The $28 million Settlement Amount is within the common recovery range for class actions of this sort.

## VII.   THE COURT SHOULD APPROVE THE CONTENT AND DISTRIBUTION OF THE PROPOSED NOTICE

The proposed Notice Plan and Claim Forms ("Notice")[42] fully comport with the procedural and substantive requirements of Rule 23. *See Affidavit of Katherine Kinsella*, ¶ 28 (Exhibit E to Settlement Agreement and Release).   Under Rule 23, due process requires that class members receive notice plus an opportunity to be heard and participate

---

[40] *Cendant*, 264 F.3d at 240.

[41] *Warfarin*, 391 F.3d at 538.

[42] Attached to the *Settlement Agreement and Release of the GlaxoSmithKline Defendants* (concurrently filed herewith), are the following Exhibits: Exhibit A – Proposed Preliminary Approval Order; Exhibit B – Proposed Final Approval Order; Exhibit C – Consumer Notice Forms (Summary and Long-Form); Exhibit D – TPP Notice Forms (Summary and Long-Form); Exhibit E – Notice Plan; Exhibit F – Consumer Claim Form; and Exhibit G – TPP Claim Form.

in the litigation.[43]  Class Counsel, along with input from counsel for GSK, have devised a Notice Plan that comports with these requirements, and follows generally accepted methods of notice, including the Federal Judicial Center's recommendations.[44]

### A.    The Notice Plan is Procedurally Fair

No statutory or due process requirement dictates that all class members must receive actual notice by mail or other means.  Rather, "individual notice must be provided to those class members who are identifiable through reasonable effort."[45]  The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process.[46]

The proposed Notice Plan contemplates disseminating notice to the Settlement Class Members through 1) a comprehensive mailed notice using a database of Third-Party Payors used in other class action settlements; 2) a summary notice by publication in targeted publications; and 3) a dedicated, neutral website, offering both a comprehensive and summary notice.  *See Kinsella Affidavit*, ¶¶ 9-27 (Exhibit E to the Settlement Agreement and Release). Direct mail notice will be sent via a claims administrator that has a database of more than 40,000 Third-Party Payors.  The parties also propose to

---

[43] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).
[44] *See* Illustrative Notices, at www.fjc.gov, "Class Action Notices Page."

[45] *Eisen*, 417 U.S. at 175-76; *see also Manual*, § 30.211 at 225 and n.709 ("Rule 23 . . . requires that individual notice in [opt-out] actions be given to all Class members 'who can be identified through reasonable effort,' with others given 'the best notice practicable under the circumstances' . . . . Due process does not require actual notice to parties who cannot reasonably be identified.").

[46] 7AA Wright & Miller, Federal Practice & Procedure Civil 3d § 1786 (2008).

publish a summary notice in publications which are targeted to reach Third-Party Payors. As to the Consumer Class, the notice is extensively published in national publications, including *Newsweek, People, TV Guide, American Profile, Parade and USA Weekend,* to name a few. The claims administrator will also maintain a website where Settlement Class Members can download the notice and claim forms, the Settlement Agreement itself, and other relevant documents.[47]

This multi-communication method is the best notice practicable, is reasonably designed to reach the Settlement Class Members, and takes into consideration the value of the direct mail database already compiled in other Third-Party Payor litigation. The Notice Plan is consistent with class certification notice plans approved by numerous state and federal courts and is, under the circumstances of this case, the best notice practicable.

## B.    The Notice is Substantively Fair

In addition to being procedurally fair, the Notice is substantively fair. Notice must fairly apprise the class members of the terms of the proposed compromise and of the options open to dissenting class members.[48] As such, the class notice should provide enough information to allow Settlement Class Members to decide whether to accept the

---

[47] The Settlement provides that the costs of notice and administration will be paid from the Settlement Amount. In addition, counsel for Plaintiffs and GSK propose retaining an experienced claims administration firm, Rust Consulting, Inc., to serve as claims administrator, and to handle notice publication and mailing, claims processing, and claims administration.

[48] *In re Veneman,* 309 F.3d 789, 792 (D.C. Cir. 2002).

23

benefits of, object to, or exclude themselves from the settlement.[49]   In addition, notice

must communicate the required information in a time frame that reasonably provides the

opportunity to those interested to make their appearances at the final approval hearing.[50]

The proposed Notice informs Class Members about the Proposed Settlement, their

right to opt out or object, the claims process and the fact that they will be bound by the

judgment if they do not opt out.  *See Kinsella Affidavit*, ¶¶ 9-11, 28. In understandable

language, the proposed Notice describes the purpose of the Notice, a summary of the

proceedings, a summary of the settlement terms, including identification of the parties

bound by the Proposed Settlement, payments made by GSK, how compensation from the

Settlement Amount will be calculated, issues related to attorneys' fees, costs and awards,

and a discussion of the relevant releases of the parties.

Additionally, the Notice advises Settlement Class Members what they need to do

to participate in the Proposed Settlement, whether through objecting, asking questions or

attending the Court's final approval hearing.  The proposed Notice also properly advises

Settlement Class Members where they can receive additional information, including

contact by telephone, mail and internet.  Accordingly, the Notice fully meets due process

requirements and the notice plan should be approved.

---

[49] *Id.*

[50] *See Grunin v. International House of Pancakes*, 513 F.2d  114, 120-21 (8th Cir. 1975).

## VIII. THE COURT SHOULD SET DATES FOR THE FINAL APPROVAL PROCESS.

After Notice is distributed and the Settlement Class Members are offered an opportunity to review the terms of the Proposed Settlement, the Court should hold a final approval hearing, to make a final determination on whether to approve the Proposed Settlement. Under the terms of the Settlement, and consistent with Rule 23, the parties ask the Court to enter an Order setting a date that is available for the Court to conduct a final approval hearing, to consider the fairness of the Proposed Settlement and to hear any comments from the Settlement Class Members. The parties therefore propose the following schedule.

### PROPOSED TIMETABLE

| | |
|---|---|
| Class Notice Mailed | Completed by April 1, 2009 |
| Class Notice Published | Completed by April 12, 2009 |
| Final Approval Motion and Fee Petition Filed | June 24, 2009 |
| Opt-out deadline | Postmarked by May 15, 2009 |
| Objection deadline | Postmarked by July 1, 2009 |
| Final Settlement Hearing | July 10, 2009 |
| Deadline for Claim Forms | August 10, 2009 |

### CONCLUSION

The Proposed Settlement provides a substantial, certain recovery to a nationwide class (which includes U.S. territories) of Consumers and Third-Party Payors, against a formidable array of legal, factual, and procedural obstacles. The parties have proposed a careful Notice Plan that will provide the best practicable notice to the class. The Proposed Settlement meets the criteria for preliminary approval, to allow dissemination

of notice to the Class, and contemplates a hearing for the Court to consider whether final approval is warranted.

Therefore, the parties request entry of an Order in the form attached.

Respectfully submitted,

DATE: _02/27/09_          BY: _John I. Nevas_

*Attorneys for Plaintiffs*

26