

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Alma Simonet, on behalf of Herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline Puerto Rico, Inc., SB Pharmco Puerto Rico, Inc., <br><br> Defendants. | CIVIL ACTION: 06-1230 (GAG) <br><br> Judge Gustavo A. Gelpi |

**ORDER GRANTING PRELIMINARY APPROVAL OF THE
SETTLEMENT, CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT,
DIRECTING NOTICE TO THE CLASS AND SCHEDULING FAIRNESS HEARING**

WHEREAS, this matter has come before the Court pursuant to a *Joint Motion for Preliminary Approval of Proposed Settlement, Certification of Class for Purposes of Settlement, and Approval of Form and Manner of Notice* (the "Motion"); and

WHEREAS, the Court finds that it has jurisdiction over these actions and each of the parties for purposes of settlement; and

WHEREAS, this Court has conducted a preliminary approval hearing on March 2, 2009 and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

    **I.    Preliminary Approval of Settlement Agreement and
Certification of Settlement Classes**

1.    The terms of the Settlement Agreement and Release of the GlaxoSmithKline Defendants dated February 27, 2009, including all Exhibits thereto, (the "Agreement") attached

to the Motion, are hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. This Order incorporates herein, and makes a part hereof, the Agreement, including the Exhibits thereto. Unless otherwise provided herein, the terms defined in the Agreement shall have the same meanings herein. The Agreement is between the Plaintiffs and Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline ("GSK"), which is, along with GlaxoSmithKline Puerto Rico, Inc., and SB Pharmco Puerto Rico, Inc., a named defendant in the above-captioned matter (collectively the "Defendants"). The Agreement was entered into at arm's-length by experienced counsel for the parties to the Agreement. The Court finds that the settlement embodied in the Agreement (the "Settlement") is sufficiently within the range of reasonableness so that notice of the Settlement should be given as provided in paragraphs 9 and 10 of this Order. In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the parties involved in both settlement of these claims and continuation of the litigation.

2. The Court has analyzed the proposed Consumer and Third Party Payor Classes defined in the Agreement pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court preliminarily finds that the proposed Consumer and Third Party Payor Classes meet all the applicable requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and hereby conditionally certifies the following Classes for settlement purposes only:

    A.    Consumer Class

           All natural persons in the United States and its territories who purchased or paid for (in whole or in part) Paxil® CR between April 1, 2002 and March 4, 2005.

    B.    Third Party Payor Class ("TPP Class")

> All entities in the United States and its territories (other than Medicaid, Medicare and other federally-funded government healthcare programs) that purchased, paid for or reimbursed for (in whole or in part) Paxil® CR between April 1, 2002 and March 4, 2005.

The Class Period for the Consumer Class and the TPP Class is April 1, 2002 through March 4, 2005. Excluded from the Classes are (1) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; (2) any judge conducting any proceedings in the Actions and his parents, spouses, and children as well as any other family member residing in the judge's household; and (3) Class Counsel and Defendants' counsel and their employees, and the parents, spouses and children as well as any other family member residing in the Class Counsel's or Defendants' counsel's household or their employees' households and all persons who have timely opted out of the Action in accordance with the Court's Orders.



3. With respect to both the Consumer and TPP Classes, the Court preliminarily finds that:

    a. *Numerosity*. The Consumer and TPP Classes, each consisting of many thousands of members located throughout the United States and its territories, satisfy the numerosity requirement of Fed. R. Civ. P. 23(a). Joinder of these widely-dispersed, numerous Class Members into one suit would be impracticable;

    b. *Commonality*. Common questions of law and fact with regard to the alleged activities of GSK exist for each of the members of the Consumer and TPP Classes in this case. In the context of this settlement, these issues are central to this case and are sufficient to establish commonality;

    c. *Typicality*. Plaintiffs have claimed during this litigation that GSK manufactured and subsequently sold Paxil® CR tablets at Defendants' Cidra, Puerto Rico facility

that were adulterated and defective because some of the Paxil® CR tablets allegedly split apart and the tablets allegedly were not manufactured in a manner that complied with Good Manufacturing Practices. In the context of this settlement, these claims are typical of every member of the Consumer and TPP Classes' claims. Therefore, the element of typicality is satisfied;

  d. *Adequate Representation.* Plaintiffs' interests do not conflict with absent members of the Consumer and TPP Classes, and Plaintiffs' interests are co-extensive with absent Class Members. Additionally, this Court recognizes the experience of Class Counsel and finds that the requirement of adequate representation of the Classes has been fully met;

  e. *Predominance of Common Issues.* Plaintiffs commonly assert that GSK's actions resulted in the sale of adulterated Paxil® CR tablets, which allegedly caused damages to Plaintiffs and the Class members. In the context of this Settlement, these issues predominate over any individual questions, favoring class treatment; and

  f. *Superiority of the Class Action Mechanism.* The class action mechanism is ideally suited for treatment of the settlement of this matter. Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

## II.  Class Representatives

4. Plaintiffs Alma Simonet and Julie Goldenberg are designated representatives of the Consumer Class. Plaintiff Universal Care, Inc., is the designated representative of the TPP Class. I find, for purposes of this settlement, that they are adequate class representatives.

5.  If the Agreement is terminated or is not consummated for any reason whatsoever, the certification of the Consumer and TPP Classes shall be void, and Plaintiffs and Defendants shall be deemed to have reserved all of their rights as set forth in the Agreement.

### III. Class and Appointment of Class Counsel

6.  The Court further preliminarily finds that the following firms fairly and adequately represent the interests of the Consumer and TPP Classes and hereby appoints them as Co-Lead Class Settlement Counsel pursuant to Rule 23(g):

> Salas & Co., L.C.
> 650 Poydras Street, Suite 1650
> New Orleans, LA  70130          (Co-lead counsel and counsel
>                                  for the Consumer Class)
>
> Strange & Carpenter
> 12100 Wilshire Boulevard
> Suite 1900
> Los Angeles, CA  90025          (Co-lead counsel and counsel
>                                  for the TPP Class)

### IV. Class Settlement Fund

7.  The Court finds that the TPP and Consumer Class Escrow Accounts are "qualified settlement funds" as defined in section 1.468B-1(c) of the Treasury Regulations in that they satisfy each of the following requirements:

   a.  The Class Escrow Accounts are established pursuant to an order of this Court and is subject to the continuing jurisdiction of this Court;

   b.  The Class Escrow Accounts are established to resolve or satisfy one or more claims that have resulted or may result from an event that has occurred and that has given rise to at least one claim asserting liabilities; and

  c. The assets of the Class Escrow Accounts are separated from other assets of GSK, the transferor of the payments to fund the Settlement.

 8. Under the "relation-back" rule provided under section 1.468B-1(j)(2)(i) of the Treasury Regulations, the Court finds that:

  a. The Class Escrow Accounts met the requirements of paragraph (8)(b) and (8)(c) of this Order prior to the date of this Order approving the establishment of the Class Escrow Accounts subject to the continued jurisdiction of this Court; and

  b. GSK and the Claims Administrator may jointly elect to treat the Class Escrow Accounts as coming into existence as "qualified settlement funds" on the latter of the date the Class Escrow Accounts met the requirements of paragraph (7)(b) and (7)(c) of this Order or January 1 of the calendar year in which all of the requirements of paragraph (7) of this Order are met. If such a relation-back election is made, the assets allocated to the Settlement on such date shall be treated as having been transferred to the Class Escrow Accounts on that date.

### V. Notice to Class Members

 9. The Court has considered the Notice Plan attached as Exhibit E to the Settlement Agreement and Release of the GlaxoSmithKline Defendants, including the proposed forms of notice, summary notice and claim forms, and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice. The Court approves the Notice Plan in all respects (including the proposed forms of notice, summary notice and claim forms) and Orders that notice be given in substantial conformity therewith. The Notice Program described in the Notice Plan shall commence on or about **April 1, 2009**.

The costs of preparing, printing, publishing, mailing and otherwise disseminating the notice shall be paid from the Class Escrow Accounts in accordance with the applicable provisions of the Agreement.

10. The Court appoints  Rust Consulting, Inc.  as the Claims Administrator. Responsibilities of the Claims Administrator shall include the following: (a) establishing a post office box and toll-free phone number (to be included in the Long Form Notices and the Summary Notices (together, the "Notices" to the Class)) for purposes of communicating with Consumer and TPP Class members; (b) establish and maintain a website for purposes of posting the Notices, the Agreement and related documents; (c) accepting and maintaining documents sent from Consumer and TPP Class members; including claim forms, exclusion requests and other documents relating to claims administration; (d) administering claims for the allocation of the settlement funds among Consumer and TPP Class Members; (e) the preparation of tax filings and payment of any taxes due as a result of interest earned by the Class Escrow Accounts; and (f) assisting in the proper execution and administration of the settlement as set forth in the settlement Agreement.

### VI. Request for Exclusion from the Consumer and TPP Classes

11. Any member of the Consumer and TPP Classes who wishes to be excluded from the Consumer or TPP Class shall mail a written notice of exclusion to the Claims Administrator, so that it is postmarked by  May 15, 2009 , and shall clearly state the following: the name, address, taxpayer identification number, telephone number and fax number (if any) of the individual or entity that wishes to be excluded from the Consumer or TPP Class and which of the Classes the person or entity intends to exclude themselves from. For Third Party Payors, the notice of exclusion must also include a signed certification containing the following language:

> The undersigned individual hereby represents that he/she has authority to sign and submit this notice of exclusion on behalf of the above-named third party payor ("TPP"), which would otherwise qualify as a member of the TPP Class. The undersigned also certifies that he/she has not received any advice from the parties to this litigation or their attorneys concerning his/her or the TPP's fiduciary obligations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1100, *et seq.*, or other laws governing their obligations to any class member. The undersigned understands that by submitting this notice of exclusion, the TPP identified above will not be entitled to receive any proceeds of the class Settlement. By affixing my signature below, I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

12. In addition, for purposes of implementing the Agreement, including calculation of the amount of the TPP Opt-Out Percentage (as described in Paragraph 11 of the Agreement), each TPP Class Member requesting exclusion shall be requested to set forth in its written exclusion request the number of the TPP Class Member's Claimed Covered Lives as of December 31, 2004.

13. Valid Class Opt-Outs shall not be bound by the Agreement, the Settlement, or the Final Order and Judgment. Upon receipt, the Claims Administrator shall promptly provide copies of each notice of exclusion to Class Counsel and GSK's Counsel.

14. Any member of the Consumer or TPP Class as defined herein that does not properly and timely mail a notice of exclusion as set forth in paragraph 11 above shall be automatically included in the Consumer Class (if a natural person) or the TPP Class (if an entity) and shall be bound by all the terms and provisions of the Agreement and the Settlement and the Final Order and judgment, whether or not such member of the Consumer or TPP Class shall have objected to the Settlement and whether or not such member of the Consumer or TPP Class makes a claim under or participates in the Class Settlement.

## VII.   Proofs of Claim

15.    To effectuate the Settlement and the provisions of the Notice Plan, the Claims Administrator shall be responsible for the receipt of all notices of exclusion and proofs of claim. The Claims Administrator shall preserve (on paper or transferred into electronic format) all notices of exclusion, proofs of claim, and any and all other written communications from members of the Consumer and TPP Classes in response to the Notices for a period of five (5) years, or pursuant to further order of the Court. All written communications received by the Claims Administrator from members of the Consumer and TPP Classes relating to the Agreement shall be available at all reasonable times for inspection and copying by Class Counsel and GSK's Counsel, until payments are mailed to each Class Member.

16.    In order to be entitled to participate in the Settlement if it is effected in accordance with all of the terms and conditions set forth in the Agreement, each member of the Consumer and TPP Classes shall take the following actions and be subject to the following requirements:

   a.    A Consumer or TPP Class Member who wishes to receive a distribution from the Class Settlement Fund must mail a properly executed proof of claim (either a TPP class claim form or a consumer claim form, whichever is appropriate (collectively, a "Proof of Claim")) to the Claims Administrator at the address indicated in the notice, to be postmarked on or before August 10, 2009. If such Proof of Claim is transmitted in any manner other than the United States Postal Service, it shall be deemed to have been submitted when actually received by the Claims Administrator and must be received by the Claims Administrator no later than August 10, 2009.

   b.  Each Proof of Claim must satisfy the following conditions: (i) the Proof of Claim must be properly completed in accordance with the instructions thereon and submitted in a timely manner in accordance with subparagraph (a) of this paragraph; (ii) the Proof of Claim must be signed and certified under penalty of perjury, (iii) the claimant must certify that he, she or it is a Class Member, or, if the person executing the Proof of Claim is acting in a representative capacity, must attest that he, she or it is acting on behalf of a Class Member and that the claimant has authority to act on behalf of the Class Member, and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein;

   c.  A Consumer Class Member may make one of two possible claims, as follows:

   (1)  A "Tier One Consumer Claim" shall be a claim made by a Consumer Class Member who attests that he or she paid for (in whole or in part) and received (during the period between April 1, 2002 and March 4, 2005) at least one but not more than five Paxil® CR tablets which were defective in that they were split before they were removed from the container in which they were purchased ("Split Paxil® CR Tablets"). A Consumer Class Member submitting a Tier One Consumer Claim shall provide proof of his or her claim in the form of a truthful written declaration attesting, under penalty of perjury, that he or she purchased or paid-for (in whole or in part) and received between one and five Split Paxil® CR Tablets between April 1, 2002 and March 4, 2005. Each individual Consumer Class Member may submit only one Tier One Consumer Claim, and may not submit a Tier Two Consumer Claim along with a Tier One Consumer Claim.

    (2) A "Tier Two Consumer Claim" shall be a claim made by a Consumer Class Member who attests to having paid for (in whole or in part) and received more than five Split Paxil® CR Tablets during the period between April 1, 2002 and March 4, 2005. A Consumer Class Member submitting a Tier Two Consumer Claim shall provide proof of his or her claim in the form of (a) a truthful written declaration that attests, under penalty of perjury, the number of Split Paxil® CR Tablets he or she paid-for and received during the relevant time period and (b) proof of payment for Split Paxil® CR Tablets in the form of any one of the following: (1) a written prescription for Paxil® CR between April 1, 2002 and March 4, 2005; (2) a receipt, cancelled check, or credit card statement that shows that he or she paid for Paxil® CR between April 1, 2002 and March 4, 2005; (3) an EOB (explanation of benefits) that shows that he or she purchased or paid-for (in whole or in part), made, or was obligated to make, a percentage co-payment for Paxil® CR between April 1, 2002 and March 4, 2005; or (4) a letter from his or her physician stating that he or she prescribed and that the Class Member paid-for, or was obligated to pay a percentage co-payment for, Paxil® CR between April 1, 2002 and March 4, 2005. Each individual Consumer Class Member may submit only one Tier Two Consumer Claim, and may not submit a Tier One Consumer Claim along with a Tier Two Consumer Claim.



    d. Each TPP Proof of Claim shall contain a truthful written declaration which attests under penalty of perjury that the TPP Class Member on whose behalf it is submitted (the "Claimant") purchased, paid for (in whole or in part) or reimbursed for Paxil® CR between April 1, 2002 and March 4, 2005, and shall set forth the number of the Claimant's Covered Lives as of December 31, 2004.

e. Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall make a recommendation to Class Counsel about which claims should be allowed in whole or in part;

f. All members of the Consumer and TPP Classes that do not submit timely Proofs of Claim, or submit Proofs of Claim that are disallowed and not cured, shall be barred from participating in the Class Settlement Fund (except to the extent that a Proof of Claim may be partially allowed) but otherwise shall be bound by all of the terms and provisions of the Agreement; and

g. Each member of the Consumer or TPP Class that submits a Proof of Claim shall thereby expressly submit to the jurisdiction of the Court with respect to the claims submitted and shall (subject to final approval of the Settlement) be bound by all the terms and provisions of the Agreement.

## VIII. Claims Process

17. After the time to submit claims has ended and all claims have been subject to validation by the Claims Administrator, the Claims Administrator shall calculate the value of each validated Consumer Class member claim as follows:

a. Each valid Tier One Consumer Claim shall be valued at $50.00 (fifty dollars and no cents).

b. Each valid Tier Two Consumer Claim shall be valued at $50.00 (fifty dollars and no cents), plus $10.00 for every Split Paxil® CR Tablet in excess of five, up to a maximum of $150.00.

18.   *Final Calculation.* After determining the initial value of each validated Consumer Class Claim, the Claims Administrator shall determine the total value of all Consumer Class Claims, in connection with the Final Accounting described in Paragraph 16 of the Agreement. If the total of (a) all such validated Consumer Class Claims, plus (b) all attorneys' fees and expenses awarded for litigation of the Consumer Class claims, plus (c) 60% of all notice costs, claims administration fees, taxes, and other administrative costs associated with the settlement, plus (d) any incentive payment awarded to the named Consumer Class Plaintiffs is *less than* the Consumer Class Settlement Amount, then each valid Consumer Class Claim shall be paid at its full claim value, as set forth immediately above. If the total of the items enumerated above is *greater than* the Consumer Class Settlement Amount, then each Consumer Class Claim shall be paid on a pro rata basis, based on the funds remaining in the Consumer Class Escrow Account after deposit by GSK of the amount required by Paragraph 4.D. of the Agreement and the payment of items (b) through (d) enumerated above.

19.   After the time to submit claims has ended and all claims have been subject to validation by the Claims Administrator in accordance with the requirements set forth on the TPP Claim Form and in the Agreement, and all disputes, if any, concerning such claims have been resolved, the Claims Administrator shall calculate the value of each validated TPP Class Member claim as follows:

a.   Each TPP Claimant's Validated Covered Lives Number shall be divided by the number that is the total of *all* of the TPP Claimant's Validated Covered Lives Numbers (which does not include any TPP Opt-outs). The result for each TPP Class Member that filed a valid claim, expressed as a percentage, shall be known as the "TPP Class Claimant's Recovery Percentage."

b.    The amount of each valid TPP Class Claimant's recovery under the settlement shall be determined by the Claims Administrator, subsequent to the Effective Date, by multiplying the TPP Claimant's Recovery Percentage by the total amount remaining in the TPP Class Escrow Fund after payment of (a) the GSK Refund Amount (if any), (b) all attorneys' fees and expenses awarded for litigation of the TPP Class claims, (c) 40% of all notice costs, claims administration fees, taxes, and other administrative costs associated with the settlement (as determined by the Final Accounting pursuant to Paragraph 16 of the Agreement, and (d) any incentive payment awarded to the named TPP Class Plaintiff, which total remaining amount shall be referred to herein as the "TPP Claims Payment Pool." The product of each valid TPP Claimant's Recovery Percentage times the TPP Claims Payment Pool shall be the amount of payment to be made to that TPP Class Claimant.

### IX.    Confidentiality

20.    Any information received by the Claims Administrator in connection with this Settlement that pertains to a particular member of the Consumer or TPP Classes, or information submitted in conjunction with a notice of exclusion (other than the identity of the entity requesting exclusion), shall not be disclosed to any other person or entity other than Class Counsel, Defendants' Counsel, and the Court, or as otherwise provided in the Agreement.

### X.    Fairness Hearing

21.    A hearing on final settlement approval (the "Fairness Hearing") will be held on July 10, 2009, at 9:00 A.M. before this Court, at the United States District Court for the District of Puerto Rico, Clemente Ruiz-Nazario U.S. Courthouse, 150 Carlos Cardon Street, San Juan, Puerto Rico, to consider, *inter alia*, the following: (a) whether the Consumer and TPP Classes should be finally certified; (b) the fairness, reasonableness and adequacy of the

Settlement, the dismissal with prejudice of the Class Action, and the entry of final judgment; (c) whether Class Counsel's application for attorney's fees, expenses and incentive awards for the Class Representatives (the "Fee Petition") should be granted; and (d) whether to approve the proposed plan of allocation and distribution.

22. On or before June 24, 2009, the Co-Lead Class Settlement Counsel shall file with the Court: (i) any memoranda or other materials in support of final approval of the Settlement; and (ii) any Fee Petition.

23. Any member of the Consumer or TPP Class that has not filed a notice of exclusion in the manner set forth above may appear at the Fairness Hearing in person or by counsel and may be heard, to the extent allowed by the Court, either in support of or in opposition to the fairness, reasonableness and adequacy of the Settlement, the dismissal with prejudice of the Action, the entry of final judgment, and/or the Fee Petition; provided, however, that no person shall be heard in opposition to the Settlement, dismissal and/or entry of final judgment or the Fee Petition, and no papers or brief submitted by or on behalf of any such person shall be accepted or considered by the Court, unless submitted to the Court and served upon Counsel for the parties on or before July 1, 2009. Such person must (a) file with the Clerk of the Court a notice of such person's intention to appear as well as a statement that indicates the basis for such person's opposition and any documentation in support of such opposition on or before July 1, 2009, and (b) serve copies of such notice, statement and documentation, as well as any other papers or briefs that such person files with the Court, either in person or by mail, upon all Counsel to the parties on or before July 1, 2009. Class Members who fail to object in the manner and by the dates provided herein shall be deemed to have waived and shall forever be foreclosed from raising any such objections.

24. Counsel for the parties who must be served with all documentation described above in Paragraph 24 are as follows:

> <u>Counsel for Consumer and TPP Classes</u>
> Brian Strange
> Strange & Carpenter
> 12100 Wilshire Boulevard
> Suite 1900
> Los Angeles, CA 90025
>
> <u>Counsel for GSK</u>
> Frederick G. Herold
> Dechert, LLP
> 2440 W. El Camino Real, Suite 700
> Mountain View, CA 94040

25. The date and time of the Fairness Hearing shall be set forth in the Notice and Summary Notice, but shall be subject to adjournment by the Court without further notice to the members of the Class other than that which may be posted at the Court, on the Court's website, and/or the website to be established pursuant to the Notice Plan.

26. All discovery and other pretrial proceedings in the Action are stayed and suspended, pending the Final Approval of the Settlement ("Final Approval"), except such proceedings as are provided for in the Agreement, or which may be necessary to implement the terms of the Agreement, the Settlement, or this Order.

27. Any Consumer or TPP Class member may hire an attorney at his or her or its own expense to appear in the action. Such attorney shall serve a Notice of Appearance on the Counsel listed in Paragraph 24 above by _July 1, 2009_, and file it with the Court on or before _July 1, 2009_.

28. Pending Final Approval, no Consumer or TPP Class Member, either directly, representatively, or in any other capacity (other than a Consumer or TPP Class member who

validly and timely elects to be excluded from the Class), shall commence, continue or prosecute against any or all of the GSK Releasees any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action that are to be released upon Final Approval pursuant to the Agreement, and are hereby enjoined from so proceeding. Upon Final Approval, all Consumer and TPP Class Members that do not file a timely notice of exclusion shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released pursuant to the Agreement, and any such Consumer or TPP Class Member shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Agreement.

## XI.   Other Provisions

29.   Upon Final Approval, each and every term and provision of the Agreement (except as may be modified by the Final Approval Order) shall be deemed incorporated into the Final Order and Judgment as if expressly set forth and shall have the full force and effect of an Order of the Court.

30.   In the event the Settlement is terminated in accordance with the provisions of the Agreement, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided in the Agreement, and without prejudice to the *status quo* ante rights of Plaintiffs and the Defendants.

31.   Neither this Order nor the Agreement shall constitute any evidence or admission of liability by any Defendant, nor shall they be offered in evidence in this or any other proceeding except (a) to consummate or enforce the Agreement or the terms of this Order, or (b) by any of the GSK Releasees in connection with any action seeking to assert a Released Claim.

Date: 3-2-09

_____
Gustavo A. Gelpi
United States District Judge