|  |  |
|---|---|
| Alma Simonet, Julie Goldenberg, individuals, and Universal Care, Inc., a California Corporation, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline Puerto Rico, Inc., SB Pharmco Puerto Rico, Inc.,<br><br>        Defendants. | **CASE NO. 06-1230 (GAG)** |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**PLAINTIFFS' MOTION FOR AN ORDER
REQUIRING APPELLANTS-OBJECTORS TO FILE A BOND PURSUANT TO
<u>FEDERAL RULES OF APPELLATE PROCEDURE, RULE 7</u>**

Under Rule 7 of the Federal Rules of Appellate Procedure, plaintiffs Alma Simonet, Julie Goldenberg and Universal Care, Inc. and their counsel (collectively, "Class Counsel"), on behalf of themselves and the Class, hereby request that this Court issue an order requiring Objectors-Appellants Clay Bain and Francis E. Sweeney, Jr. as Administrator for the Estate of Keith Allen (collectively, the "Objectors") to post an appeal bond in the amount of $70,300. Responsibility for the appeal bond should be apportioned as the Court deems appropriate.

1

**Introduction**

On September 4, 2009, this Court entered a final order and judgment approving a $28 million settlement of this case (the "Settlement" or "Settlement Fund"). On September 24, 2009, two consumer objectors, Bain and Sweeney, filed a combined notice of appeal of this Court's final order and judgment (Docket Nos. 166 and 167, respectively) (hereafter, the final order and judgment will collectively be referred to as the "Final Order.")[1]

The strategy employed by the Objectors in filing their underlying objections can best be described as a "shotgun approach." The arguments in the objections challenged virtually every aspect of the settlement, from the lack of subclasses, to class certification, to attorneys' fees, to allocation of settlement funds between consumers and third-party payors, and to the structure of the settlement and claims process. Each objection was without merit and was properly overruled by this Court in the Final Order.

The problem with Objectors' appeal isn't that it lacks merit -- it does. Rather, the problem is that irrespective of whether it has any chance of success, it necessarily will cause a lengthy delay in distribution of funds to the Class, and, more importantly, it will cost the class tens of thousands of dollars in administrative costs. It is simply inappropriate that the Class should bear the harm associated with Objectors' meritless appeal, not Objectors and their counsel.

That such a delay will occur is clear from the Settlement Agreement itself. Pursuant to the terms of that agreement, the Effective Date of the Settlement, as applicable here, is after an "Order and Final Judgment is upheld on appeal in all material respects and is no longer subject to review upon appeal or review by writ of certiorari[.]" Settlement Agreement at ¶ 10(C). This date is important because class members will not be paid under the terms of the agreement until a Final Accounting has occurred, an event triggered by the Effective Date. *See* Settlement Agreement at ¶¶ 16, 17(C). Moreover, up until the

---

[1] A *nunc pro tunc* order granting final approval of the class action settlement was also entered on September 10, 2009. (Docket No. 168.)

Effective Date, the Settlement Agreement may still be terminated by any party under a variety of circumstances, including if "the Order and Final Judgment is modified or reversed in any material respect by the U.S. Court of Appeals or the U.S. Supreme Court[.]" Settlement Agreement at ¶ 20. Should such a termination occur under ¶ 20 of the Settlement Agreement, defendants SmithKline Beecham Corporation d/b/a GlaxoSmithKline, GlaxoSmithKline Puerto Rico, Inc., SB Pharmco Puerto Rico, Inc. (collectively, "Defendants") would be entitled to a refund of all undisbursed Settlement Funds. Thus, class members are entitled to ***no payments*** under the terms of the Settlement Agreement until after Objectors' appeal has been resolved.

The delay caused by Objectors' appeal will also directly harm class members by reducing the size of the Settlement Fund. Here, Class Counsel and the administrator of the Settlement Fund estimate that the administrative and copying costs associated with Objectors' appeal will be at least $70,300. This is money that will be lost forever and not recovered by the Class.

The inordinate delay in recovery and lost administrative costs that must be borne by the Class as the result of Objectors' appeal is not lost upon Objectors or their counsel. Indeed, it is the belief that causing such a delay and cost will cause Class Counsel to pay Objectors to go away that is driving Objectors' appeal. Causing delay and cost to the Class is the primary tactic of professional objectors in attempting to extract a fee. And, no matter how you couch it, it is fair to say that this isn't the "first rodeo" for Objectors' counsel. Even a limited Westlaw search will demonstrate numerous cases where Objectors' counsel appear. Not surprisingly, almost every time it is as an objector. *See* Declaration of Brian Strange ("Strange Decl."), ¶¶ 3-4 (listing select published cases in which Mssrs. Weinstein and Pentz have appeared as objectors' counsel). One federal district court has even noted that Mr. Pentz, one of Objectors' counsel, "is a professional and generally unsuccessful objector[.]" *In re Royal Ahold N.V. Securities & Erisa Litigation*, 461 F.Supp.2d 383, 386 (D.Md. 2006). Mr. Weinstein's objection record is equally well established. It therefore stands to reason that these Objectors' tactics here,

like the tactics of numerous other objectors in which Objectors' counsel have appeared, is solely for the purpose of improperly extracting a fee for Objectors' counsel from the Settlement Fund. This is inappropriate.

Rule 7 of the Federal Rules of Appellate Procedure permits this Court to require appellants to post a bond or other security "in any form and amount necessary to ensure the payment of costs on appeal." *Fed.R.App.P.* 7. In addition to the costs taxable pursuant to Rule 39 of the Federal Rules of Appellate Procedure, these "costs" may also include, under appropriate circumstances, additional administrative costs occasioned by the appeal. *See, e.g., In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816 (6th Cir. 2004) (requiring appellants to post bond for attorneys' fees and additional administrative costs).

Here, where Objectors' counsel are professional objectors and the appeals process will undoubtedly harm the class by both delaying payment under the Settlement Agreement and materially reducing the amount of recovery due to increased administrative costs, an appeal bond is appropriate. Requiring such a bond would best serve the interests of the Class, which on balance, far outweigh the interests of professional objectors.

Accordingly, this Court should exercise its discretion to require Objectors to post adequate security in the form of an appeal bond. Class Counsel estimate that the expenses and additional administrative costs engendered by this appeal may be at least $70,300. The appeal bond should be in that amount.

I.   BRIEF PROCEDURAL HISTORY AND FACTUAL BACKGROUND

   A.   Procedural History

The Clay Bain Objection was filed July 10, 2009, by attorney Weinstein. (ECF Doc. No. 130). Weinstein objected to class certification and incorrectly claimed class certification was not properly alleged in the complaint. Weinstein also argued that separate consumer sub-classes should have been certified. In addition, Weinstein disputed adequacy of the notice, complained the reversionary fund was improper, and argued the requested fees were improper. *See id.*

4

1    The Allen Objection was originally filed July 6, 2009 by attorney Sweeney on
2 behalf of an estate. (ECF Doc. No. 128.) Sweeney later hired attorney Pentz and re-filed
3 an objection on July 15, 2009. (ECF Doc. No. 128.) Pentz's new objection blindly
4 claimed the settlement benefited unharmed third-party payors. He also wrongly argued
5 that the two subclasses were not represented by separate attorneys. Pentz objected further
6 to the requested attorneys' fees and made an argument about attendance at the fairness
7 hearing, which was moot by the time he made the objection. *See id.*

8    Class Counsel responded to all objections and fully briefed all issues raised. (*See*
9 Plaintiffs' Consolidated Response to All Objections to the Settlement and Fee Petition,
10 ECF Doc. No. 140.) This Court held a fairness hearing on July 27, 2009 and subsequently,
11 on September 4, 2009, overruled the Clay Bain Objection and the Allen Objection, along
12 with all other objections. (ECF Doc. No. 167.) Judgment was entered September 4, 2009.
13 (ECF Doc. No. 167.) A *nunc pro tunc* order granting final approval of the class action
14 settlement was entered on September 10, 2009. (ECF Doc. No. 168.) Attorney Weinstein
15 subsequently filed a notice of appeal on September 24, 2009 for objectors Clay Bain and
16 Sweeney. (ECF Doc. No. 169.)

17    B.    Estimated Administrative Costs Associated with the Delay That Will Be Caused by
18          Objectors' Appeal

19    As outlined in the in the affidavit of the claims administrator Eric Miller, the delay
20 in distribution caused by an appeal carries with it significant costs to the members of the
21 Class. Such costs will include maintaining a Post Office Box; maintaining a toll-free
22 number for claimants to call with questions; training customer service representatives to
23 answer additional telephone calls with appeals-related questions; processing additional,
24 unanticipated correspondence (such as change-of-address forms and status requests from
25 Class Members); responding to e-mails; keeping the Settlement website (for this
26 Settlement, www.SimonetPaxilCRSettlement.com) up and running; revising the website
27 and telephone Frequently Asked Questions (FAQs); and updating the pre-recorded toll-free
28

5

1 telephone hotline script as necessary; warehousing documents, and performing various
2 administrative tasks. (E. Miller Aff. at ¶5.)
3       The single most significant cost component of any delay relates to telephone
4 charges. (*Id.* at ¶7.) The pendency of an appeal would make the continuation of call
5 service all the more necessary as many claimants naturally would have questions
6 concerning the status of the Settlement during the period it might be "on hold." (*Id.*)
7 Assuming a year-long delay as the result of an appeal, it is estimated unanticipated
8 administrative costs will be $70,000. (*Id.* at ¶8.)

10 II.    ARGUMENT
11       Federal Rule of Appellate Procedure 7 provides that "[i]n a civil case, the district
12 court may require an appellant to file a bond or provide other security in any form and
13 amount necessary to ensure payment of costs on appeal." *Fed.R.App.P.* 7. The
14 determination as to whether to require that a Rule 7 bond be posted and the proper amount
15 of the bond is left to the discretion of the district court. *See Pan Am. Grain Mfg. Co. v.*
16 *P.R. Ports Auth.*, 193 F.R.D. 26, 43 (D.P.R. 2000) ("Rule 7 leaves to the discretion of the
17 district court in a civil case whether to require the filing of a bond for costs on appeal.");
18 *Lundy v. Union Carbide Corp.*, 598 F.Supp. 451, 452 (D.Or. 1984) ("The requirement of
19 an appeal bond under Appellate Rule 7 is left to the discretion of the district court.").
20       Class Counsel respectfully requests that this Court impose a bond here that includes
21 both the copying costs set forth by *Fed.R.App.P.* 39(e) and the additional administrative
22 costs that will be suffered by the Settlement Fund as the result of the delay caused by
23 Objectors' appeal. It cannot be disputed that these costs will be suffered by Class Counsel
24 and the Settlement Fund if Objectors' appeal is prosecuted to completion. Accordingly, a
25 bond in the full amount of these additional costs should be required to protect the Class. A
26 bond in the amount of $70,300, comprising $300 in copying costs under Rule 39(e) and
27 $70,000 in additional administrative costs caused by the delay, should therefore be
28 required of Objectors.

### A. The bond should include the costs of copies under Fed. R. App. P. 39(e)

Rule 39(e) provides:

> The following costs on appeal are taxable in district court for the benefit of the party entitled to costs under this rule:
>
> (1) the preparation and transmission of the record;
> (2) the reporter's transcript, if needed to determine the appeal;
> (3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
> (4) the fee for filing the notice of appeal.

*Fed.R.App.P.* 39(e).

Here, Class Counsel anticipates incurring costs taxable under Rule 39(e) in the approximate amount of $300.00, which is the estimated cost for printing and copying briefs and other submissions. Declaration of Brian Strange, ¶ 9.[2]

There can be no dispute that requiring a bond including these costs is appropriate. These reasonable costs are clearly taxable under Rule 39(e) and should be included in any appellate bond ordered by this Court. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D. N.Y. 1999) (ordering a Rule 7 bond of $101,500 that included "costs on appeal in the amount of $1,500").

### B. The Bond Should Include the Costs of Delay and Disruption Caused to the Settlement Fund

#### 1. Costs Included in *Fed.R.App.P.* 7 Bond Are Not Limited to Those Enumerated by *Fed.R.App.* 39

The costs that may be included in a Rule 7 bond are not limited to those enumerated in Fed.R.App.P. 39.[3] Indeed, almost every court that has considered the issue has

---

[2] The costs are based on the limit of 10 cents per page set by 1st Circuit Local Rule 39.0 (rule sets recoverable amount as lesser of amount posted on First Circuit website (10 cents) or actual reproduction cost).

[3] Should this Court determine that an appeal is frivolous, it may also include in any appellate bond "damages" suffered by appellants, including attorneys' fees through *Fed.R.App.P.* 38. *Skolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987); *Maher v. Hyde*, (footnote continued)

concluded that the costs in *Fed.R.App.P.* 39 are non-inclusive and that other costs may be included in a Rule 7 bond.

*In re Cardizem CD Antitrust Litigation*, 391 F.3d 812 (6th Cir. 2004) is on point here. There, an individual filed an objection to a class action settlement. After that objection was overruled by the trial court, the objector filed a notice of appeal. *Id*. at 815. Shortly thereafter, the trial court imposed a *Fed.R.App.P.* 7 bond on the objector "in the amount of $174,429.00, consisting of $1,000.00 in filing and brief preparation costs, $123,429.00 in incremental administration costs, and $50,000 in projected attorneys' fees." *Id*. The objector then "challenge[d] the propriety of including prospective administrative costs and attorneys' fees as part of the appeal bond." *Id*. Before the Sixth Circuit, the objector "argue[d] that the district court erred in not limiting the scope of the 'costs' to be included in the appeal bond amount to those listed in *Fed. R.App. P.* 39." *Id*. at 816.

The Sixth Circuit rejected the objector's argument. It noted that the Supreme Court had already determined that a similar statute defining "costs," *Fed.R.Civ.P.* 68, was not so limited, and could include an award of attorneys' fees if allowed by the underlying statute. *Id*., *quoting Marek v. Chesny*, 473 U.S. 1, 9, 105 S.Ct. 3012 (1985). Moreover, the Sixth Circuit noted that the only two courts of appeals that had addressed the issue, the Second Circuit and the Eleventh Circuit, had rejected "the notion that Rule 39 defined 'costs' throughout the Federal Rules of Appellate Procedure, [and] f[ound] that 'Rule 39 has no definition of the term "costs" but rather defines the circumstances under which costs should be awarded.'" *In re Cardizem CD Antitrust Litigation*, 391 F.3d at 816, *quoting Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir.1998*); see also Pedraza v. United Guar. Corp*., 313 F.3d 1323 (11th Cir.2002) (same).

---

272 F.3d 83, 87 (1st Cir. 2001) ("Rule 38 permits the award of attorney's fees as 'just damages'")(*quoting Cronin v. Town of Amesbury*, 81 F.3d 257, 261 (1st Cir. 1996)). While plaintiffs believe that Objectors' appeal is frivolous, they have not sought the potential award of attorneys' fees in the requested bond amount.

The Sixth Circuit accordingly "adopt[ed] the reasoning of the Second and Eleventh Circuits[.]" *Id*. at 817. In doing so, it concluded that "*Fed. R.App. P*. 39 does not define 'costs' at all; rather, it merely lists which costs of appeal can be 'taxed' by the district court if it chooses to order one party to pay costs to the other." *In re Cardizem CD Antitrust Litigation*, 391 F.3d at 817, *quoting Adsani,* 139 F.3d at 74.

While the First Circuit has not directly ruled on this issue, its decision in *Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) indicates that it would likely agree with its counterparts in the other circuits. In *Sckolnick*, the First Circuit took an expansive view of what costs might be included in a *Fed.R.App.P.* 7 bond, holding that a district court may order that such a bond include a possible award of sanctions, including attorneys' fees on appeals. There, the district court had ordered a litigious *pro s*e defendant to post a bond of $5,000 prior to filing an appeal. *Id*. at 15. The appellees had sought a bond in that amount as "security for the costs, including attorneys' fees, which may be awarded by the United States Court of Appeals for the First Circuit to [defendants] pursuant to *Fed.R.App.P*. 38 and 39." *Id*. In affirming the district court's bond requirement, the First Circuit confirmed that it was appropriate for a district court to include in a *Fed.R.App.P.* 7 bond costs that are not expressly enumerated in *Fed.R.App.P*. 39.

Because a *Fed.R.App.P.* 7 bond is not limited to those costs enumerated in *Fed.R.App.P*. 39, this Court should include in any bond required administrative costs caused by delay as set forth below.

        2.      <u>In the Class Action Settlement Context, Courts May Require *Fed.R.App.P.* 7 Bonds That Include Administrative Costs</u>

           (a)      <u>Public policy demands that class members be protected from the actions of self-interested objectors' counsel</u>

For years, any lawyer with a basic knowledge of class actions and a computer could hold hostage a class action simply by lodging meritless objections in the hopes that they will be paid to forego their objections and appeals. This case is a classic example where

repeat objectors have filed cookie cutter claims all in the hopes of extracting some sort of payment for dropping their claims and halting the delay.

Repeat objectors to class action settlements can make a living simply by filing frivolous objections and appeals to slow down the settlement process in class actions. Indeed, class action attorneys--both for plaintiffs and defendants--have long recognized that, the larger the settlement, the more cost-effective it is to pay objectors rather than suffer the delay of waiting for an appeal to be decided. Given these economic realties, professional objectors can levy what is effectively a tax on class action settlements, a tax that benefits no one other than the objectors. Literally nothing is gained; class counsel pay the objectors a fee to go away and the settlement remains as is, with at most, a token modification to "justify" the objector's fee.

This paradigm is playing out here. By filing an appeal, Objectors will necessarily delay the recovery of the class members here by 12 to 18 months. That delay will cost the class members a substantial amount of money. Indeed, as set forth in the Glenn Declaration, the anticipated delay caused by Objectors' appeal here will likely cost the class $70,000. Objectors are obviously hoping that it is worth more to Class Counsel to pay them off than to wait through the delay of this appeal.

Objectors' unabashed self-interest in cases such as this one have not gone unnoticed by the courts. Indeed, courts have become increasingly burdened by professional objectors attempting to tie up class action settlements in an effort to extract a fee. As one court recently noted:

> "class actions [] attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors, which now seem to accompany every major securities litigation."

*In re Cardinal Health, Inc. Securities Litigation*, 550 F.Supp.2d 751, 754 (S.D.Ohio 2008); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D.Pa. 2003) ("Federal

courts are increasingly weary of professional objectors"). *See also In re UnitedHealth Group Incorporated PSLRA Litigation*, Case No. 06-CV-1691 (JMR/FLN) (D.Minn.)[4], Order of Sept. 4, 2009 (noting of objectors that "[t]heir goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement" and that the "Objector's counsel are entitled to an award equal to their contribution . . . nothing.")

In light of the dubious intent of Objectors in filing an appeal and the inordinate costs to the Class Members that will inevitably result from the delay caused by that appeal, public policy demands that the absent class members be protected by requiring Objectors to post a bond in the amount of the costs that the class members will suffer as the result of such a delay.

(b)   <u>Administrative costs are often included in *Fed.R.App.P.* 7 bonds in the class action settlement context</u>

In light of the doubtful purpose behind many objector appeals in the class action context, not surprisingly, the imposition of appellate bonds under *Fed.R.App.P*. 7 in these types of cases has been increasing. In fact, many courts have recognized that "[a]n appeal bond is not uncommon in these circumstances given the delay and costs which may be incurred by the class by an appeal." *Dehoyos v. Allstate Corp*., 240 F.R.D. 269, 316 (W.D.Tx. 2007), *citing Hamlin v. Charter Twp. of Flint,* 181 F.R.D. 348, 353 (E.D.Mich. 1998) (same (in the supersedeas bond context)).

The Dec. 5, 2005 Order Granting Class Plaintiffs' Motion to Require Appeal Bond in *In re Broadcom Corp. Securities Litig.*, Case No. SACV 01-275 DT (MLGx) (C.D. Cal.) is instructive here.[5] In that litigation, 31 putative federal securities class actions were filed against Broadcom and certain of its officers and directors. *Id*. at 2. Those cases were consolidated and, "after four years of litigation and nearly a year of mediation," a settlement agreement was reached by the parties. *Id*. at 1, 3. Pursuant to the terms of that

---

[4] A true and correct copy of this decision is attached as Exhibit A to the Strange Decl., filed concurrently herewith.
[5] A true and correct copy of this order is attached to the Strange Decl. as Exhibit B.

11

agreement, the defendants were to pay $150 million into an escrow account in two installments--the first of $108 million, the second of $42 million. *Id*. at 2.

During the final approval process on the settlement a class member, Rinis Travel Services, Inc. ("Rinis") objected and filed a notice of appeal. *Id*. at 3. In response, the Class Plaintiffs filed a motion to require Rinis to post an appeal bond under *Fed.R.App.R. 7*. *Id*. at 2. That request included a request that administrative costs be included in the bond amount. The district court granted the motion in its entirety.

In determining whether administrative costs should be included in the bond, the Class Plaintiffs argued that the "Objector's appeal effectively postpones the distribution of the entire judgment for well over a year." *Id*. at 6. They further noted:

> "the Class will incur the following administrative costs of delay: costs of updating addresses and other information needed to remain in contact with Class members, locating lost Class members, sending notices to Class members to apprise them of Objector's appeal and keep them informed about the status of the appeal, paying monthly fees for maintaining the website created to inform Class members, and providing phone support to answer questions from Class members. These expenses are estimated to be approximately $517,700.

*Id*.

The district court granted the Class Plaintiffs' request and required that the bond include the full $517,700 in anticipated administrative costs. The district court's rationale was simple: "Objector's appeal is tantamount to a stay of judgment approving the class settlement. While Objector did not formally move to stay the Judgment, its appeal effectively imposes a stay, forcing the Class to bear the same risks. Because there is no supersedeas bond to protect the Class from these risks, this Court finds it proper to impose a Rule 7 bond to serve the same purpose. Indeed, Objector's appeal effectively postpones distribution of the entire judgment for well over a year." *Id*. at 7-8.

The Court in *In re Cardizem CD Antitrust Litigation* reached the same conclusion. As discussed more fully above, the district court there ordered that an objector to a class action settlement post a bond that included "$123,429.00 in incremental administration costs" caused by an appeal. *In re Cardizem CD Antitrust Litigation*, 391 F.3d at 815. The

Sixth Circuit affirmed the lower court's ruling, holding, in part, that such administrative costs are recoverable in a *Fed.R.App.P.* 7 bond. *Id.* at 817.

District courts in this circuit have agreed. In *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252 (D.Me. Oct. 7, 2003), the district court addressed the propriety of an appeal bond that included both attorneys' fees and additional costs associated with the filing of an appeal. After concluding that the appeal "might be frivolous," the court noted that an award of sanctions on appeal by the First Circuit was "a real probability." *Id.* at *2. Accordingly, the court held that it was appropriate for the objector to be required to post a bond of $35,000 that included administrative costs. *Id.*[6]

Similarly, the court in *In re Pharmaceutical Industry Average Wholesale Price Litigation* (MDL No. 1456), 520 F.Supp.2d 274 (D.Mass. 2007), when faced with this issue, required a Rule 7 bond that included administrative costs. The Court started its analysis by noting that:

> With respect to objections to class action settlements, some courts have gone one step further and held that costs under Rule 7 may also include administrative costs to the classes that will likely be caused by the delay. *See Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *8-9 (D.Mass. Aug. 22, 2006) (imposing interest on the class settlement for one year as costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252 (D.Me. Oct.7, 2003) (imposing an appeal bond to cover a portion of fees of bank administering the class settlement fund and other costs as well as projected attorneys' fees); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 124, 128-29 (S.D.N.Y.1999) (requiring appellant to provide security for disruption costs from a shut-down of the settlement administration).

---

[6] The court also recognized that in the First Circuit, a Rule 7 bond can include not just administrative costs but attorneys' fees and any other costs that might be considered damages under *Fed.R.App.P.* 38: "Because *Sckolnick* makes clear that in the First Circuit a Rule 7 bond *can* cover damages assessed under Fed. R.App. P. 38, I agree with *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 124, 128 (S.D.N.Y.1999), that damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond." *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 2003 WL 22417252, at *1 (D.Me.,2003).

*Id.* at 277-278.  After concluding that the objector's appeal would likely be frivolous, the court then imposed a bond for $61,000 in administrative costs.  *Id*. at 279.  In doing so, the court noted the objectors' argument that "there are public policy reasons to minimize the hurdles to a litigant's right to appeal imposed by appeal bonds." *Id*. (citation omitted).  Nevertheless, it concluded that "Still, the class is likely to be damaged if the appeal is rejected and there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions.  There is no evidence that a bond would pose an undue hardship on the objector." *Id.*

Other courts throughout the country have reached the same conclusion and required an appropriate Rule 7 bond that included administrative costs caused by delay.  *See In re NASDAQ Market Makers Antitrust Litigation*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (accepting plaintiffs argument "that the increased administrative expenses resulting from the delay caused by Genins' appeal will damage the Class by directly causing 'waste' to the Settlement Fund" and requiring a Rule 7 bond that included $50,000 of administrative costs); *Allapattah Services, Inc. v. Exxon Corp.*, 2006 WL 1132371, at *18 (S.D.Fla. 2006) (requiring, pursuant to *Fed.R.App.P.* 7, an objector "to post an appeal bond in the amount [of $13,500,000.00] sufficient to cover the damages, costs and interest that the entire class will lose as a result of the appeal"), *citing Pedraza*, 313 F.3d at 1328; *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 316 (W.D.Tex. 2007) (requiring an appeal bond be posted by any objector that filed an appeal).

The same rationale behind all these cases apply here as well.  Objectors' counsel are professional objectors.  And, Objectors' appeal will undoubtedly cost the Class at least $70,000 in additional administrative costs.  Given this scenario, it would be a miscarriage of justice for the Class to bear the burden of delay associated with Objectors' appeal.  That burden should fall squarely on Objectors and a Rule 7 bond that includes the entire $70,000 in additional administrative costs should be ordered here.

Conclusion

For the foregoing reasons Plaintiffs' Motion for an Order Requiring Appellants-Objectors to File a Bond Pursuant to Federal Rules of Appellate Procedure, Rule 7 should be granted in its entirety. Appellants-Objectors should be required to post a bond in the amount of $70,300.00.

RESPECTFULLY SUBMITTED:

In San Juan, Puerto Rico, this 2nd day of October, 2009

COUNSEL FOR PLAINTIFFS

John F. Nevares
John F. Nevares & Associates PSC
P.O. Box 13677
San Juan, Puerto Rico 00908
Tel: (787) 793-4906
Fax: (787) 721-8820
*jfnevares@nevareslaw.com*

*s/John F. Nevares*

Brian Strange
Strange & Carpenter
12100 Wilshire Boulevard
Suite 1900
Los Angeles, CA 90025
Tel: (310) 207-5055 // Fax: (310) 826-3210

Camilo K. Salas III
SALAS & Co., L.C.
650 Poydras Street, Suite 1660
New Orleans, LA 70130
Tel: (504) 799-3080
Fax: (504) 799-3080

Michael L. Baum
Baum, Hedlund, Aristei & Goldman
12100 Wilshire Boulevard
Suite 950
Los Angeles, CA 90025
Tel: (310) 207-3233
Fax: (310) 820-7444

J.D. Horton
Quinn Emanuel et al
865 S Figueroa St 10th FL
Los Angeles, CA 90017
Tel: 213-533-8648  Fax: 213-624-0643

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2009, I caused to be served PLAINTIFFS' MOTION FOR AN ORDER REQUIRING APPELLANTS-OBJECTORS TO FILE A BOND PURSUANT TO FEDERAL RULES OF APPELLATE PROCEDURE, RULE 7; **on all parties via the court's ECF filing system.**

**October 2, 2009**

John F. Nevares
John F. Nevares & Associates
COUNSEL for PLAINTIFFS
P.O. Box 13677
San Juan, Puerto Rico 00908
Tel:  (787) 793-4906
Fax: (787) 721-8820

jfnevares@nevareslaw.com

s/John F. Nevares